Mahmud v. Bondi

BIA
Ruehle, IJ
A209 410 428

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of April, two thousand twenty-five.

PRESENT:
> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

LUENDO MAHMUD,
> *Petitioner,*

v.                                                                                            **23-6043**
                                                                                             **NAC**

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:                         Japheth Matemu, Maspeth, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Ilana J. Snyder, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Luendo Mahmud, a native and citizen of Burundi, seeks review of a December 15, 2022 decision of the BIA that affirmed a July 16, 2019 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Luendo Mahmud,* No. A209 410 428 (B.I.A. Dec. 15, 2022), *aff'g* No. A209 410 428 (Immigr. Ct. Buffalo July 16, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We consider both the IJ's and the BIA's opinions. *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). "We review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard," and "[w]e review *de novo* questions of law and the application of law to fact." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he

2

administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We find no error in the agency's determinations that: (1) Mahmud failed to demonstrate a nexus between a 2014 robbery and his political opinion, and (2) he otherwise failed to meet his burden of proof as to incidents in 2015 and 2018, due to credibility issues and a lack of corroboration.

## I. Nexus as to 2014 attack

An asylum applicant has the burden to establish past persecution or a well-founded fear of future persecution and "that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a), (b). The protected ground "must be at least one of the central reasons, rather than a minor reason, for why that individual is being targeted." *Garcia-Aranda v. Garland*, 53 F.4th 752, 757 (2d Cir. 2022). Substantial evidence supports the agency's conclusion that Mahmud did not demonstrate that his political opinion was a central reason for his 2014 robbery and assault. *See Edimo-Doualla v. Gonzales*, 464 F.3d 276, 282–83 (2d Cir. 2006) (reviewing nexus determination for substantial evidence).

3

"In order to establish persecution on account of [a] political opinion . . . an . . . applicant must show that the persecution arises from his or her own political opinion." *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005) (internal quotation marks omitted). "The applicant must . . . show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from the applicant's political belief." *Id.* "[W]hen a petitioner bears the burden of proof, his failure to adduce evidence can itself constitute the 'substantial evidence' necessary to support the agency's challenged decision." *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 157–58 (2d Cir. 2008).

Mahmud testified that in 2014 a group attacked him with machetes and robbed him. Substantial evidence supports the agency's conclusion that this incident was a robbery unconnected to Mahmud's political opinion or activities. The assailants asked him to give them his possessions, he did not recognize them because they were wearing masks, they did not identify themselves as part of a political organization, and they did not say anything to Mahmud about their or his political activities. Mahmud's wife also described the attack as a robbery in her letter, without any mention of Mahmud's political involvement. Moreover, as to this incident, as well as those addressed below, Mahmud failed to establish

4

that the government was aware of his political opinion. He testified that he joined an opposition group in 2012 and was in charge of the youth in his neighborhood, but he did not attend demonstrations or speak publicly about politics. On this record, substantial evidence supports the agency's finding that Mahmud's political opinion was not a central reason for his robbery and assault. *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021) (holding that where "the agency's conclusion finds support in record evidence, [a petitioner] cannot secure . . . relief by pointing to conflicting evidence that might support—but not compel—a different conclusion"); *Jian Hui Shao*, 546 F.3d at 157–58.

## II. Burden of proof as to 2015 and 2018 incidents

As noted above, the burden of proof is on the applicant. *See* 8 U.S.C. § 1158(b)(1)(B)(i). "The testimony of the applicant may be sufficient . . . without corroboration, but only if the applicant satisfies the trier of fact that [his] testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that [he] is a refugee. In determining whether the applicant has met [his] burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless

5

the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* § 1158(b)(1)(B)(ii). In making an adverse credibility determination, the factfinder must "[c]onsider[] the totality of the circumstances," including the applicant's "demeanor, candor, or responsiveness" and the consistency of an applicant's statements and evidence. *Id.* § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76. The agency did not err in concluding that Mahmud failed to meet his burden of proof.

First, the agency reasonably concluded that Mahmud was not credible as to his allegation that government security forces went to his mother's home searching for him in 2015. The agency "may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." *Xiu Xia Lin*, 534 F.3d at 167 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Although we have cautioned that "in general omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony," "the

6

probative value of a witness's prior silence on particular facts depends on whether those facts are ones the witness would reasonably have been expected to disclose." *Hong Fei Gao*, 891 F.3d at 78 (internal quotation marks omitted).

The agency reasonably relied on Mahmud's failure to mention the 2015 incident in his written statement. Mahmud testified that government security agents visited his mother's home in 2015 searching for him, but he did not include that allegation in the three-and-a-half-page written statement attached to his asylum application. And, it was not unreasonable for the agency to expect him to have included it, as it was one of only three incidents of alleged persecution. *See Jian Liang v. Garland*, 10 F.4th 106, 115 (2d Cir. 2021) (upholding adverse credibility determination where petitioner omitted "critical information that he would reasonably have been expected to disclose much earlier"); *Hong Fei Gao*, 891 F.3d at 78–79; *Xiu Xia Lin*, 534 F.3d at 167 (relying in part on omissions in third party letters as to facts "not directly material" to petitioner's claim to support an adverse credibility determination). The IJ was not required to credit Mahmud's explanation that he omitted the information to be concise given the length of his written statement and other references to conditions in 2015. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a

7

plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)). And when the IJ pressed Mahmud about the meaning of the vague allegation in his written statement that he was "subject of a pursuit," Mahmud repeatedly gave non-responsive answers. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (explaining that an IJ "may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness").

Mahmud's credibility regarding the events of 2015 was further called into question by his failure to provide reliable corroboration. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question."). As the IJ found, the letter from Mahmud's wife does not mention his involvement in politics or that security forces searched for him in 2015, and Mahmud did not submit a letter from his mother who allegedly saw the agents visit Mahmud at the home they then shared. Mahmud's explanations—that his wife omitted information to be concise and that he did not request a letter from his

8

mother because it would have distressed her—do not resolve these credibility issues or provide corroboration.

Mahmud also failed to corroborate a purported 2018 meeting and threatening calls from a former commander affiliated with the ruling party. Mahmud's country conditions evidence did not discuss the individual, and his wife's letter did not mention a meeting or threats in 2018. It was reasonable to expect that she would include these events in a letter supporting an asylum claim based on the events. Mahmud's explanation that she omitted this information to be concise is implausible given the significance of the omitted facts. *See Xiu Xia Lin*, 534 F.3d at 167 ("Because [petitioner] gave no plausible explanation for this omission from her friend's letter, the omission reasonably raised doubts as to the accuracy of [petitioner's] account of her own persecution."). Moreover, Mahmud's failure to produce reasonably available corroboration from his wife and mother is an independent basis for the denial of asylum. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *Pinel-Gomez v. Garland*, 52 F.4th 523, 529–30 (2d Cir. 2022) ("An IJ who finds an applicant's testimony credible may still decide that the testimony falls short of satisfying the applicant's burden of proof, either because it is unpersuasive or because it did not include 'specific facts sufficient to demonstrate

9

that the applicant is a refugee.'" (quoting 8 U.S.C. § 1158(b)(1)(B)(ii))); *Wei Sun v. Sessions*, 883 F.3d 23, 28 (2d Cir. 2018) ("[I]n some cases . . . an applicant may be generally credible but his testimony may not be sufficient to carry the burden of persuading the fact finder of the accuracy of his claim of crucial facts if he fails to put forth corroboration that should be readily available.").

Lastly, the IJ did not err in giving diminished weight to a letter Mahmud submitted from an aid organization and to a photograph his wife purportedly took. "We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013). As the IJ found, a comparison of the letter from the aid organization and Mahmud's letter to the organization reveals discrepancies that call the reliability of the letter into question: the organization's letter is dated July 14, 2015, but states that it is responding to a letter from Mahmud dated July 24, 2015. And the photograph Mahmud submitted at the end of his hearing purportedly showing security forces outside his home lacked any foundation or documentary evidence to determine when, where, and by whom the photograph was taken.

In sum, the agency did not err in concluding that Mahmud failed to meet his burden of proof for asylum given the lack of evidence that the 2014 robbery

10

and assault was connected to his political opinion, his lack of credibility regarding the 2015 event, and the absence of reliable corroboration of events in 2015 or 2018. *See* 8 U.S.C. § 1158(b)(1)(B)(i), (ii). This finding is dispositive of Mahmud's asylum and withholding of removal claims. *See* 8 U.S.C. § 1231(b)(3)(C) (withholding statute incorporating credibility and corroboration provisions from asylum statute); *Hong Fei Gao*, 891 F.3d at 76 ("Where the same factual predicate underlies a petitioner's claims for asylum . . . [and] withholding of removal . . . an adverse credibility determination forecloses . . . [both] forms of relief.").

## III. CAT Relief

The IJ denied CAT relief on the same basis as asylum and withholding of removal, and the BIA found that CAT claim waived on appeal. To the extent that Mahmud failed to meet his burden of establishing a well-founded fear of persecution, he also fails to meet his burden of showing he would "more likely than not" be tortured. 8 C.F.R. § 1208.16(c)(2); *see Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010) ("Because [petitioner] fails to demonstrate the slight, though discernable, chance of persecution required for the grant of asylum, he necessarily fails to demonstrate . . . the more likely than not to be tortured standard required for CAT relief." (internal quotation marks and citations omitted)). He did not

11

otherwise exhaust any arguments specific to his CAT claim, and he has abandoned any such arguments by failing to raise them here. *See Ud Din v. Garland*, 72 F.4th 411, 419–20 & n.2 (2d Cir. 2023) (concluding that issue exhaustion is mandatory when the Government raises it); *Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (internal quotation marks omitted)).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

12